Sixta and another, Appellants, vs. Ontonagon Valley, Land Company, Respondent.

*January 11—January 30, 1912.*

*Contracts: Consideration: Seal: Brokers: Selling land on commission: Option to purchase: Acceptance: Breach by owner: Damages: Pleading: Demurrer.*

1. By written contract the defendant company gave plaintiffs the exclusive right, until January 1, 1911, to sell certain of its lands on commission, subject to the company's right to make sales of the land at not less than $10 per acre, and also gave plaintiffs the right and option, at any time before January 1, 1911, to purchase all unsold lands at the uniform price of $6 per acre.   Plaintiffs were to bear all expenses of marketing and sale of the land, and in case they exercised their option to purchase were to be credited on the purchase price with any excess in cash or securities above $6 per acre received by defendant on previous sales, whether made by it or by plaintiffs.   In an action upon the contract, a complaint alleging that plaintiffs duly performed on their part up to and after May 23, 1910, and had sold 1,380 acres, and intended to purchase all the unsold land under the terms of their option, but that on that date defendant violated the contract by selling all the remaining land at less than $10 per acre, thereby disabling itself from performing the agreement, and refused to deal further with plaintiffs thereunder, and made it impossible for plaintiffs to perform on their part, as they were able, ready, and willing to do, to their damage in the sum of $100,000, is *held*, on demurrer, to state a good cause of action.

2. Upon a general demurrer to a complaint the question as to just what damages are recoverable is unimportant, it being sufficient that a cause of action for some damages is stated.

3. The contract above stated is an entirety, including the option feature, and the covenants of each party constituted a consideration for the covenants of the other.

4. A contract under seal imports, presumptively at least, a sufficient consideration.

5. The allegations of the complaint above stated sufficiently show an acceptance of the option to purchase, in view of the fact that defendant refused to deal further with plaintiffs under the agreement.

APPEAL from an order of the circuit court for Manitowoc county: E. B. BELDEN, Judge. *Reversed.*

This action was brought upon the following contract, which is made part of the complaint:

"This agreement, made and concluded this 5th day of April, A. D. 1909, by and between the *Ontonagon Valley Land Company,* a Wisconsin corporation, herein called the 'Land Company,' party of the first part, and E. C. Sixta & Company, a copartnership composed of *E. C. Sixta* and *James G. Martin,* herein called 'Sixta,' party of the second part, witnesseth:

"1. The Land Company hereby gives to Sixta the exclusive authority and right to sell all of the lands of the Land Company particularly described in the schedule thereof hereunto attached and made a part hereof and marked 'Exhibit A,' for and until January 1, 1911.

"2. The price and prices at which such lands shall be sold shall be made from time to time by the Land Company upon application of Sixta, and the terms of each sale made by Sixta shall be subject to the approval of the Land Company.

"3. The Land Company agrees to pay Sixta, as commission for selling said lands, one dollar and fifty cents ($1.50) per acre.

"4. Sixta shall at his own expense advertise said lands for sale and continuously during the term of this agreement endeavor to sell said lands.

"5. All expenses in connection with the sale and marketing of said lands shall be borne by Sixta. All cash received from

the sale of said land after deducting the commission of Sixta shall be immediately turned over and delivered to the Land Company, and all securities taken upon sales shall be taken in the name of the Land Company.

"6. At any time prior to the expiration of this contract, to wit, January 1, 1911, Sixta is hereby given the right, privilege, and option of purchasing all of the lands described in said annexed list which shall remain unsold at the time of exercising the option hereby given, at the uniform price of six ($6) dollars per acre; and it is agreed by the Land Company that all money received by it, as well as the face value of all securities received by it upon sales theretofore made by Sixta, after deducting therefrom the sum of six ($6) dollars per acre for all such lands sold, shall be credited to Sixta and considered a payment upon the purchase price of the lands which Sixta shall elect to purchase.

"7. It is expressly understood and agreed, however, that this contract shall vest in Sixta no right, title, interest, claim, or demand of any character whatsoever in the real estate described in the annexed schedule, nor shall this contract be recorded in the register of deeds' office in any county where the lands described in the annexed list are located. But if Sixta shall elect to purchase pursuant to the option hereby given, then the Land Company shall execute to Sixta a contract of purchase which may be recorded. If Sixta shall elect to purchase, there shall be paid to the Land Company, at the time of such election, the sum of at least twenty thousand ($20,000) dollars, to be applied upon the purchase price to be paid for said lands, and the unpaid purchase money shall be payable in three equal annual instalments secured by mortgage of the land sold and bearing interest at the rate of five per cent. (5 %) per annum.

"8. It is further agreed and made an express provision of this contract that in any sale made by Sixta of the lands described in the annexed schedule, there shall be reserved to the Diamond Match Company, an Illinois corporation, one half (1-2) of all the mineral rights upon said real estate, and to the Land Company one fourth (1-4) of all such mineral rights, together with the right to each of them of entering upon said land and extracting the minerals and the right to the use of the waters thereof for such purpose.

"9. If Sixta shall exercise the option hereby given to purchase said real estate, in the conveyance thereof to him there shall be reserved to the Diamond Match Company one half (1-2) of all the mineral rights upon and in said real estate, and to the Land Company one eighth (1-8) of such mineral rights, together with the right to each of them to enter upon said real estate and mine for and extract such minerals and the right to the use of the waters on such real estate for said purpose.

"10. It is further expressly agreed that nothing in this contract shall limit or prevent said Land Company from making sales of said real estate at any time or to any person; but the Land Company agrees not to sell any such land for a less sum than ten ($10) dollars per acre.   On sales made by the Land Company no commission shall be paid Sixta, but if he shall exercise the option hereby given him the Land Company agrees to credit Sixta upon such purchase all sums over and above six ($6) dollars per acre received by it upon sales made by itself.

"In witness whereof the parties of the second part have hereunto set their hands and seals the day and year above written, and the *Ontonagon Valley Land Company* has caused these presents to be signed in its corporate name by Julius Lindstedt, its president, and countersigned by Edwin G. Nash, its secretary, and its corporate seal to be hereto affixed, all by due and lawful authority of its board of directors.

THE ONTONAGON VALLEY LAND COMPANY,

In presence of          By Julius Lindstedt, Its President.
Alma E. Klingholz.
Nora Dicke.                         Countersigned by
      (Seal.)                 E. G. Nash, Its Secretary.
              E. C. SIXTA.    (Seal.)
              JAMES G. MARTIN.    (Seal.)"

In addition to setting out the contract as the basis of the action the complaint alleges that the plaintiffs were engaged in the purchase and sale of lands and in the sale of lands on commission in Wisconsin and Michigan; that on the 5th day of April, 1909, at Manitowoc, the plaintiffs made the contract referred to; that the lands embraced in the contract were 17,340 acres; that immediately after the contract was made

the plaintiffs proceeded diligently to carry out its terms on their part to be performed, advertised the lands for sale, solicited persons to buy and sold 1,380 acres, and performed all the conditions on their part of said contract up to the 23d day of May, 1910, and continued performance for some time thereafter; that plaintiffs had prepared and were prepared to carry out all the provisions of said contract within the time and in the manner therein specified, and were prepared and intended to purchase all the lands as specified in paragraph 6 of said contract; that on May 23, 1910, without the knowledge of the plaintiff, the defendant, in violation of the terms of said contract, sold and conveyed to the W. J. Hess Company, a corporation, all of the lands not theretofore sold by plaintiffs for a sum less than $10 per acre, and the defendant by said sale, voluntarily and in disregard of the plaintiffs' rights under said contract, disabled itself from carrying out the terms thereof on its part, and thereafter and during the month of July, 1910, informed plaintiffs that it had so disabled itself and refused to further deal with plaintiffs under said contract, and thereby made it impossible for plaintiffs to carry out said agreement on their part, although they were able, ready, and willing so to do, to the plaintiffs' damage in the sum of $100,000.

The defendant demurred to the complaint for want of facts sufficient to constitute a cause of action. The court below sustained the demurrer, and from the order sustaining the demurrer this appeal was taken.

For the appellants there was a brief by *Hougen & Brady,* and oral argument by *A. L. Hougen.*

For the respondent there was a brief by *Nash & Nash,* and oral argument by *E. G. Nash.*

KERWIN, J. Under the contract which is the basis of plaintiffs' cause of action the plaintiffs had the exclusive right of sale of the lands of defendant until January 1, 1911, and

were to receive $1.50 per acre commission, subject to defendant's right to sell all or any part of the land at not less than $10 per acre, and plaintiffs were to receive no commission on land sold by defendant. Plaintiffs were further given the right, at any time prior to January 1, 1911, to purchase all the lands in question which should remain unsold at the time of exercising their option, at the uniform price of $6 per acre; and it was agreed by the terms of the contract that all money received by defendant, as well as the face value of all securities received by it upon sales theretofore made by plaintiffs, after deducting $6 per acre, should be credited to plaintiffs, to apply upon the purchase price of the lands which plaintiffs should elect to purchase. The defendant also agreed to credit plaintiffs, if they should elect to purchase, with all sums over and above $6 per acre received by defendant on sales made by it. All expenses in connection with sale and marketing of the land were by the contract to be borne by plaintiffs. The plaintiffs duly performed on their part up to and after May 23, 1910, and sold 1,380 acres, advertised the lands for sale and solicited persons to buy, and were prepared to carry out all the provisions of the agreement within the time and in the manner specified, and intended to purchase all the land specified in paragraph 6 of the agreement. The defendant violated the contract on May 23, 1910, by a sale of all lands not theretofore sold by plaintiffs for less than $10 per acre, and disabled itself from performing its agreement with plaintiffs and so informed plaintiffs, and refused to further deal with plaintiffs under the agreement, and made it impossible for plaintiffs to carry out the agreement on their part, although plaintiffs were able, ready, and willing so to do. It is alleged that plaintiffs sustained $100,000 damages.

The foregoing facts are admitted by the demurrer and constitute a good cause of action against the defendant. Just what damages may be recovered need not be considered and cannot well be until the evidence is in. It is sufficient that

the complaint states a cause of action for the recovery of some damages.

The main contention of respondent is that the writing sets out a selling agency and an option to purchase, and that the option was not binding until accepted, and that it was revoked or withdrawn before accepted, hence plaintiffs never acquired any rights under it. The so-called option feature of the contract cannot be separated from the commission part. Each is dependent upon the other: the covenants are mutual. The covenants of each party to the contract constitute a consideration for the covenants of the other party. The contract is an entirety. The promises are mutual and are a sufficient consideration between the parties to the contract. *Hawes v. Woolcock,* 26 Wis. 629. Moreover, the contract is under seal, which imports, presumptively at least, a sufficient consideration. Sec. 4195, Stats. (1898); *Carey v. Dyer,* 97 Wis. 554, 73 N. W. 29; *Kuener v. Smith,* 108 Wis. 549, 84 N. W. 850. The covenant that defendant should not sell for less than $10 per acre was for the benefit of plaintiffs, because they had an interest in all moneys received on sales above $6 per acre, in case they elected to purchase. Moreover, by the sale at less than $10 per acre the defendant violated the express terms of the contract and disabled plaintiffs from continuing to make sales upon commission. The plaintiffs had the right to purchase all unsold land at any time before January 1, 1911. The defendant could not sell for less than $10 per acre so as to cut off the plaintiffs' right to purchase; and when it did sell for less, plaintiffs were entitled to the damages occasioned by the breach. But it is argued by respondent that plaintiffs did not exercise their option to purchase. We think the allegations of the complaint show an acceptance of the option in so far as plaintiffs were able to accept. It was not necessary for them to do a vain and useless thing. They allege in their complaint "That said plaintiffs had prepared and were prepared to carry out all of the

provisions of said agreement within the time and in the manner therein specified, and were prepared and intended to purchase all of said lands as specified in paragraph 6 of said agreement," and that they were prevented from so doing by defendant's breach of the contract, which breach disabled defendant from performing on its part; that in the month of July, 1910, defendant informed plaintiffs that it had disabled itself from performing its part of the agreement and refused to further deal with plaintiffs under the agreement, and thereby made it impossible for plaintiffs to carry out the agreement on their part, although they were able, ready, and willing so to do. These allegations admitted by demurrer were sufficient to show acceptance on the part of plaintiffs and offer to perform, in face of the fact that the defendant refused to further deal with plaintiffs under the agreement.

Counsel for appellants relies upon implied terms which he argues necessarily flow from the writing though not expressed. We do not find it necessary to pass upon such contention, since we are satisfied that by the express terms of the contract, together with the allegations of the complaint, a good cause of action is pleaded.

*By the Court.*—The order appealed from is reversed, and the cause remanded with directions to overrule the demurrer and for further proceedings according to law.