SIXTA and another, Appellants, vs. ONTONAGON VALLEY LAND COMPANY, Respondent.

SAME, Respondents, vs. SAME, Appellant.

*April 13—May 21, 1914.*

*Contracts: Exclusive agency for sale of lands: Option to purchase: Conveyance and assignment by principal: Deeds: Operation and effect: Breach of contract: Waiver: Damages recoverable by agents and optionees: Avoidable consequences.*

1. A contract of exclusive agency for the sale of certain lands, with an option to purchase all or any of the lands at $6 per acre, contained stipulations to the effect that all sales made by the agents must be submitted to the principal to fix the price and terms of sale, that all moneys received on approved sales, above the stipulated commission, were to be turned over to the principal, but that, in case of the agents' electing to purchase the unsold lands, all sums in excess of $6 per acre received by the principal upon the lands sold were to be credited on the purchase price of the lands which the agents elected to purchase. The principal reserved the right to sell, but at not less than $10 per acre, in which case no commission was to be paid the agents, but all sums above $6 per acre received upon such sales were to be credited upon lands they might purchase. *Held*, that these provisions showed a relation of personal confidence between the parties; that the obligation to fix the price and terms of sale was to be exercised for their mutual benefit, with-

out interference or hindrance by others; and that a conveyance of the lands to a third person, though made subject to the contract and accompanied by an assignment thereof, introduced an interest hostile to the agents and constituted a breach of the agency part of the contract.

2. The principal also, by transferring all its pecuniary interests in the lands and by assignment of the contract, placed itself in a position adverse to the agents' interests in respect to making sales, and made it more difficult to obtain conveyances upon such sales, and this, too, constituted a breach of the contract on its part.

3. A sale by the principal of the whole tract, or the whole of the unsold lands, was within the purview of the contract, and, if made at less than $10 per acre, violated both the agency and option features of the contract; and such violation of either part of the agreement constituted a substantial breach thereof.

4. Where a deed of the lands was fully executed and delivered, the consideration paid, and the contract assigned, there was a completed sale of the lands within the meaning of the contract, notwithstanding a clause in the deed providing that it should not take effect as a transfer of the title until the expiration of the option period and that if the optionees should elect to purchase the grantee would join with the grantor in conveying to them the lands to which they might be entitled.

5. The contract having been thus breached by a sale by the principal, the agents had the right to stand on such breach, refuse to continue working under the contract, and sue for damages.

6. The fact that the agents, after the lands were conveyed by the principal, reported sales negotiated by them before such conveyance, and remitted therefor, to the principal, who thereupon turned the matter over to its grantee and notified the agents thereof, did not constitute a waiver of the breach, where the agents immediately replied that they considered the agreement abrogated and would look to the principal for damages.

7. The evidence as to the damages suffered by the agents by reason of being deprived of the right to continue selling the lands through the contract period, was vague and indefinite, and upon the record such damages were too remote and incapable of ascertainment.

8. But, the contract being an entirety and having been breached, the agents were entitled to recover all damages proximately resulting from such breach, including those based on the option feature.

9. The measure of damages for breach of an option contract is not the same as upon a contract for the sale of lands, but the op-

tionee is entitled to recover as damages the value of the contract and to have restored to him that with which he parted for the option.

10. It appearing in this case that, through sales by the agents at more than $6 per acre, a large fund had been accumulated to their credit applicable as a payment under their option, the breach of the contract operated directly to deprive them of the right of applying this sum and consequently caused them the loss of it, and the amount thereof was recoverable as damages.

11. But, upon the principle of avoidable consequences, there could be no recovery of damages for deprivation of securing the land, where the grantee of the principal agreed with the latter to convey in case the agents should elect to purchase under their option.

APPEALS from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Modified and affirmed.*

This action is brought to recover damages for breach of a written contract by which the defendant, as owner of lands, gave the plaintiffs the exclusive agency from date of the contract, April 5, 1909, until January 1, 1911, for the sale of the lands included in the contract. The quantity of land was 17,340 acres in Ontonagon county and adjoining counties in Michigan. The defendant agreed to pay the plaintiffs a commission of $1.50 per acre upon all lands sold by them under the contract. This commission was to be deducted from the purchase moneys received on such sales, and all other purchase moneys and securities to be taken in the defendant's name were to be turned over to the defendant. It was agreed that the prices and terms of sale of lands by the plaintiffs were to be made by and subject to the approval of the defendant; and the plaintiffs were required to advertise the lands for sale at their own expense and continually endeavor to sell them, and they were to bear all the expenses of marketing the land. The defendant also gave the plaintiffs an option to purchase the lands or those remaining unsold on or at any time before January 1, 1911, at the uniform price of

$6 per acre. It was agreed that of the moneys and the face value of securities received by the defendant upon sales made by the plaintiffs, all above $6 per acre "shall be credited to *Sixta* [*Sixta* and *Martin*] and considered a payment upon the purchase price of the lands which *Sixta* shall elect to purchase." The defendant reserved the right and was not to be prevented.

"from making sales of said real estate at any time or to any person; but the *Land Company* agrees not to sell any such land for a less sum than ten ($10) dollars per acre. On sales made by the *Land Company* no commission shall be paid *Sixta,* but if he shall exercise the option hereby given him, the *Land Company* agrees to credit *Sixta* upon such purchase, all sums over and above six ($6) dollars per acre received by it upon sales made by itself."

It appears that the plaintiffs, immediately after the contract was made, commenced advertising and selling the lands, and by June, 1910, had sold 1,380 acres at an average price of $14.48 per acre.

On May 23, 1910, the defendant conveyed by statutory warranty deed all the unsold lands, being 16,360 acres, to the W. J. Hess Company at the rate of $6 per acre. This deed contained the provision:

"This conveyance is made subject to all the rights of *E. C. Sixta* and *James G. Martin* under an option and agency contract executed by them and said grantor and dated April 5, 1909, a copy of which contract has this day been delivered to said grantee and the receipt of such copy is acknowledged by the acceptance of this conveyance, and the grantee herein covenants and agrees to perform all the terms and conditions of said contract imposed on the grantor as to all lands described in this conveyance."

The plaintiffs obtained information of this conveyance June 24, 1910, and soon thereafter protested to the defendant's officers, claiming the defendant had no right to make such transfer and sale at a price of less than $10 per acre.

It also appears that the defendant, on the day of executing

this deed to the Hess Company, made a formal assignment of this agency and option contract between the plaintiffs and the defendant, and the Hess Company agreed to perform and complete the contract as was required of the defendant; that as to the lands theretofore sold by the plaintiffs the defendant reserved the right and assumed the duty to settle and adjust the matter with the plaintiffs, and this contract of assignment stipulated that it was particularly understood and agreed between the defendant and the Hess Company that no title to the lands embraced in the deed to the Hess Company should pass to the Hess Company, and the deed should not be effectual to convey title until after the option given the plaintiffs expired and the plaintiffs refused to exercise their rights under it; and that if the plaintiffs exercised their rights under the option the Hess Company agreed to join the *Land Company* in a deed to the plaintiffs for the purpose of issuing to the plaintiffs a good title to the lands. On June 25, 1910, the Hess Company, by warranty deed in form and context like the deed from the defendant to the Hess Company, conveyed all the lands to the Ontonagon Valley Settlement Company. On June 27th the plaintiffs reported by letter to the defendant sales of parcels of land to Wallen and to Bernhardt, inclosing cash payment and terms of sale. On July 9th the defendant replied thereto, acknowledging receipt, and stated:

"As we personally advised you, we have sold our interest in the contract with you covering our Ontonagon Valley lands to the W. J. Hess Company of this city. We are advised by them that they have since transferred the land to the Ontonagon Valley Settlement Company. We have therefore turned the checks and your correspondence over to the Ontonagon Valley Settlement Company, who will give the matter their prompt attention."

The plaintiffs on August 2, 1910, replied thereto, stating that they expected the defendant to carry out its contract with them; that they had spent considerable money and time ad-

vertising the lands and developed an interest in their sale; that they had many prospective purchasers and intended to exercise their option; that the defendant's action rendered it impossible to do anything further under the contract, and demanded that the defendant make good to them their losses resulting from the defendant's breach of the contract. The president, Lindstedt, of the defendant company, and the secretary, Mr. Nash, after the plaintiffs were informed of the Hess transfer and assignment, in conversations pertaining to these. matters asserted to the plaintiffs that they could proceed and continue under their contract,—that the conveyance and assignment to the Hess Company did not affect their rights. The plaintiffs did not continue to make sales after those made to Wallen and Bernhardt, nor did they exercise their option. The defendant's officers were not applied to to fix prices or specify terms on any other sales by the plaintiffs except as shown by the transaction here involved.

The court found there was a nominal breach of the contract, but that no damages were proven as resulting from the agency part of the contract, and that only nominal damages resulted to the plaintiffs from the breach of the contract, and awarded them judgment for six cents and for their costs of action. Both parties appeal from this judgment.

For the plaintiffs there were briefs by *Hougen & Brady,* attorneys, and *P. H. Martin,* of counsel, and oral argument by *A. L. Hougen* and *P. H. Martin.* They argued, among other things, that the contract was personal and nonassignable, and was also entire and indivisible. *Johnson v. Vickers,* 139 Wis. 145, 120 N. W. 837; *Arkansas Valley S. Co. v. Belden M. Co.* 127 U. S. 379, 387, 8 Sup. Ct. 1308; *Boston Ice Co. v. Potter,* 123 Mass. 28; *Swarts v. Narragansett E. L. Co.* 26 R. I. 388, 59 Atl. 77; *Campbell v. Sumner,* 64 Kan. 376, 67 Pac. 866; *Edison v. Babka,* 111 Mich. 235, 69 N. W. 499; *Winchester v. Davis P. Co.* 67 Fed. 45; *Worden v. C. & N. W. R. Co.* 82 Iowa, 735, 48 N. W. 71; *Craig v. Miller,* 6 Ky.

440; 4 Cyc. 22, 23; *Delaware v. Diebold S. & L. Co.* 133 U. S. 473, 10 Sup. Ct. 399, 33 L. ed. 674; *Burck v. Taylor*, 152 U. S. 634, 14 Sup. Ct. 696, 38 L. ed. 578; *American C. Co. v. Continental C. Co.* 188 U. S. 108, 23 Sup. Ct. 265, 47 L. ed. 404; *New York B. N. Co. v. Hamilton B. N. E. & P. Co.* 180 N. Y. 280, 73 N. E. 48; *Eastern A. Co. v. Mc-Gaw*, 89 Md. 72, 42 Atl. 923; *Globe & R. F. Ins. Co. v. Jones*, 129 Mich. 664, 98 N. W. 580; *Sloan v. Williams*, 138 Ill. 43, 27 N. E. 531; *Pike v. Waltham*, 168 Mass. 581, 47 N. E. 437; *Linn County A. Co. v. Beechley*, 124 Iowa, 146, 99 N. W. 702. By disposing of the lands defendant had disabled itself from performing its contract and rendered it impossible for plaintiffs to do anything further under it, and plaintiffs were entitled to treat the contract as breached and to recover damages. *Richey v. Union Cent. L. Ins. Co.* 140 Wis. 486, 122 N. W. 1030; *Merrick v. Northwestern Nat. L. Ins. Co.* 124 Wis. 221, 102 N. W. 593; *Lovell v. St. Louis Mut. L. Ins. Co.* 111 U. S. 264, 4 Sup. Ct. 390; *Kelley, M. & Co. v. La Crosse C. Co.* 120 Wis. 84, 97 N. W. 674.

For the defendant there were briefs by *Nash & Nash* and *Lines, Spooner, Ellis & Quarles,* and oral argument by *George Lines.* They contended, *inter alia,* that the contract with and conveyance to the Hess Company did not affect plaintiffs' contract or place the lands beyond their reach. *Sizer v. Clark,* 116 Wis. 534, 93 N. W. 539; *Sixta v. Ontonagon Valley L. Co.* 148 Wis. 186, 134 N. W. 341; *Foster v. Lowe,* 131 Wis. 54, 110 N. W. 829. The title did not pass by the Hess deed. *Jones v. Caird,* 153 Wis. 384, 141 N. W. 228; *Rowell v. Barber,* 142 Wis. 304, 125 N. W. 937; *Ferguson v. Mason,* 60 Wis. 377, 19 N. W. 420; 2 Devlin, Deeds (3d ed.) § 958. The *Sixta* contract was assignable. *New England I. Co. v. Gilbert E. R. Co.* 91 N. Y. 153; *New York B. N. Co. v. Hamilton B. N. E. & P. Co.* 180 N. Y. 280, 73 N. E. 48; *Northwestern C. & L. Co. v. Byers,* 133 Mich. 534, 95 N. W. 529; *American B. & T. Co. v. B. & O.*

*S. W. R. Co.* 124 Fed. 866; *Dorr v. Alford,* 111 Iowa, 278, 82 N. W. 789; *Devlin v. Mayor,* 63 N. Y. 8; *Parsons v. Woodward,* 22 N. J. Law, 196; *Groot v. Story,* 41 Vt. 533. If it was not assignable, then the unauthorized assignment was a nullity, of which fact plaintiffs were bound to take no- tice.     *Brush E. Co. v. California E. L. Co.* 52 Fed. 945, 964; *New England I. Co. v. Gilbert E. R. Co.* 91 N. Y. 153.

SIEBECKER, J. 'An examination of the contract made by the parties discloses that the plaintiffs were given the exclu- sive right to sell the lands as the defendant's agents, except that the defendant had the right to sell upon the terms and conditions specified.     Another stipulation provided that all sales made by the plaintiffs must be submitted to the defend- ant to fix the price and the terms of sale, and the moneys re- ceived on the sales approved by the defendant, above the stipu- lated commission the plaintiffs were entitled to, were to be turned over to the defendant and all securities taken on sales were to be in defendant's name and for its benefit.     These stipulations concerning the agency of the plaintiffs clearly show a relation of personal confidence and evince an intent that the right reserved to the defendant to fix prices and terms on sales made by the plaintiffs should be exercised by the de- fendant's officers, and that this obligation should be per- formed for the mutual benefit of the two parties to the con- tract without interference or hindrance by others.     The con- veyance of the lands and the assignment of the contract to the Hess Company brought a third party into the transaction, which was manifestly contrary to the understanding embod- ied in the agreement, and brought a party into it whose in- terests were clearly hostile to those of the plaintiffs and clearly tended to alienate the friendly co-operation of the de- fendant's officers to further the plaintiffs' rights and interests in fixing prices and terms of sales for the remainder of the time fixed by the contract.     It is evident that the Hess Com-

pany made the purchase to obtain the lands, and this in itself naturally made the Hess Company adverse to further sales by the plaintiffs. The defendant, by transferring all its pecuniary interests in the lands and by assignment of the contract, was likewise put in the position of an adverse party to the plaintiffs' interest in making sales. It also followed that, if the plaintiffs desired to perform their agency agreements, they encountered additional obstacles in securing conveyances of the defendant and of the subsequent purchaser, the Ontonagon Valley Settlement Company. That these results were the consequence of the defendant's conveyance to the Hess Company is shown by their acts when the plaintiffs demanded conveyances to Wallen and Bernhardt. The circumstances of these sales clearly show that the defendant's officers were disposed to hinder and oppose the plaintiffs in carrying out sales to purchasers they might obtain as the defendant's agents, and practically prevented the plaintiffs from making sales. In substance and effect the defendant's transfers of the lands and contract to the Hess Company put the Hess Company in the defendant's place and thereby clearly violated the agency part of the contract. But the conveyance also violates the provision of the contract by which it is agreed that the defendant should have the right of making sales at any time or to any person "upon the condition that it make no sales for a less sum than ten ($10) dollars per acre." That the defendant understood this agreement to include a sale of lands as a whole is shown by its attitude in all of its dealings with the Hess Company by attempting to so frame the transfer as to give it no efficacy as a conveyance until after the plaintiffs' contract had expired; but the form of conveyance, deeding it to the purchaser, payment of the consideration, and all other acts of the parties thereto, make the transaction a completed sale of the land to the Hess Company, subject to the condition that, if the plaintiffs elected to stand upon the contract and exercise their rights thereunder, then

the grantee was to join in a conveyance of the lands to which the plaintiffs were entitled under either the agency or option features of the contract.    We consider the conveyance to the Hess Company to be a sale within the stipulation of the contract binding the defendant not to sell any such land for a less sum than ten dollars ($10) per acre, and that such sale was in its terms a breach of this agreement.    This stipulation has a twofold bearing in determining the rights and obligations of the parties to the contract: it was apparently designed to protect the plaintiffs against any sale by the defendant at a price so as to nullify the plaintiffs' efforts to establish a market for these lands at a price above the six dollars ($6) per acre at which they had an option thereon, and that all sales made by them or the defendant would produce a fund which the plaintiffs could apply on the purchase price under the option.    To allow the defendant to sell the lands as it did to the Hess Company tended to nullify both of these objects.    We consider that the sales to the Hess Company breached the agency and the option features of the contract, and that such violation of either part of the agreement constituted a substantial breach thereof.    As declared on the former appeal of the case (148 Wis. 186, 134 N. W. 341):

"The so-called option feature of the contract cannot be separated from the commission part.    Each is dependent upon the other; the covenants are mutual.    The covenants of each party to the contract constitute a consideration for the covenants of the other party.    The contract is an entirety.    The promises are mutual and are a sufficient consideration between the parties to the contract. . . . The covenant that defendant should not sell for less than $10 per acre was for the benefit of plaintiffs, because they had an interest in all moneys received on sales above $6 per acre, in case they elected to purchase."

We think the trial court erred in holding that the acts of the defendant in conveying the land to the Hess Company constituted simply a nominal breach and did not operate to

deprive the plaintiffs of any substantial rights under their contract. The conveyance of the land and assignment of the contract by the defendant resulted in serious and material deprivation of the plaintiffs' rights to have the friendly and personal co-operation of the defendant's officers in making sales of land, and in subjecting them to the hindrances and unjust burdens of dealing with titles to which a third and hostile party had acquired a right, and thus imposed adverse conditions which materially interfered with them in continuing their agency under the conditions provided for in the contract, and they suffered a loss of having the benefit of an accumulated fund of at least $4 per acre to enable them to exercise their option under the contract.

The contract having been thus breached, it was the plaintiffs' right to stand on the breach and waive their right of electing to continue the contract in force and demand its performance. The plaintiffs have elected to stand on the breach, and hence the contract drops out of consideration except as it is material to ascertain the consequence of its breach in determining what damages, if any, the plaintiffs suffered from such breach. The trial court awarded only nominal damages, upon the theory that the evidence failed to show that the plaintiffs suffered any damage from the breach of the agency feature of the contract, and that as to the option feature they were not deprived of any right, since the conveyance to the Hess Company provided that the plaintiffs were to have the right to purchase under the option. This seems to us a confusion of results, in that it holds that the contract is breached and also that it is in force in part. This we deem erroneous in two respects. First, because, as formerly held on appeal, the contract is entire and indivisible, and hence a breach of one part constitutes a breach of the entire contract, and the plaintiffs had the right to declare it abrogated in all respects; and secondly, a breach of the condition under which the defendant could make sales of land constituted a breach of the

option feature of the contract and operated to abrogate it in all its obligations when the plaintiffs elected to stand on the breach. The question then is, What damages proximately resulted to the plaintiffs from the acts of the defendant in breaching this agreement? We must not lose sight of the grounds on which the plaintiffs sue to recover damages, namely, the breach of the contract, and not under the provisions of the contract.

We cannot accede to the contention of the defendant that the acts of the plaintiffs in attempting to complete the sale of parcels of land to Wallen and to Bernhardt on June 27, 1910, constitute a waiver of the breach. The sales were negotiated before they had knowledge of this conveyance, but they reported these deals to the defendant on July 12th and remitted the cash payments made thereon and requested contracts therefor. No waiver can be held to have been made, in the light of the fact that the defendant thereupon for the first time turned the matter over to its grantee and its successor in title to complete such sales and so notified the plaintiffs on July 19th.; to which the plaintiffs replied on August 2d, declaring in direct terms that they regarded the contract had been abrogated by the defendant and they should look to it to make their losses good. Each of these various acts was merely part of a transaction which finally culminated in the commencement of this action to recover the damages for the alleged breach.

In determining what damages the plaintiffs are entitled to recover, the inquiry is, What does the evidence show the contract was worth to the plaintiffs when the defendant breached it, considering their rights as agents to sell these lands under its provisions and their rights as optionees to purchase the land? We find the evidence is too vague and indefinite for ascertaining with reasonable certainty what damages, if any, the plaintiffs suffered by being deprived of their right to continue selling these lands throughout the contract period.

Whatever profits they might realize on such sales is left to rest on mere speculation, and on the record are too remote and incapable of ascertainment. The trial court so considered it and the record fully justifies this conclusion. As to the plaintiffs' damages resulting from the breach of the option to purchase these lands, the conclusion of the trial court that they were merely nominal is not sustained. As already stated, the contract was breached and the plaintiffs elected to stand on the breach, and hence all claims and contentions that no damages resulted to them because the conveyance to the Hess Company did not affect their rights and duties growing out of the option feature of the contract are not well founded if the facts proven show that the plaintiffs sustained damages proximately resulting from the breach of the contract. The nature of an option contract has a bearing on the solution of this question. What such a contract is was clearly stated in *Barnes v. Rea,* 219 Pa. St. 279, 293, 68 Atl. 836:

"An option is not a sale. It is a right of election in the party taking the same to exercise a privilege, and only when that privilege has become exercised by acceptance in the manner specified in the agreement does it become an absolute contract, binding upon both parties. It is simply a contract by which the owner of property agrees with another person that he shall have the right to buy his property at a fixed price within a certain time. By such an agreement he does not sell his land, nor does he at that time enter into an absolute contract to sell and convey, but he does agree to sell something; that is, the right or privilege to buy at the election or option of the party with whom the agreement is made. The optionee under such an agreement takes, not lands, nor even an absolute agreement that he shall have lands conveyed to him, but he does get something of value; that is, the right to call for a conveyance of the lands if he elects to purchase in the manner specified. . . . It is a unilateral agreement containing the terms and conditions upon which the optionor agrees to sell and convey his land not yet ripened into an absolute contract to sell and convey on one side and to purchase and pay on the other."

The option contract, therefore, does not raise questions of damages for breach of a contract for sale of lands by the vendor, and hence the rule of damages in actions for breach of contract between vendor and vendee, where the vendee alleges a breach by the vendor which entitles the vendee to the difference between the contract price and the value of the land at the time of the breach, does not control this case. The case of *Boyd v. De Lancey,* 17 App. Div. 567, 45 N. Y. Supp. 693, involved the question of damages resulting from a breach of an option contract, and it was held that an action for damages based on a breach of an option by the optionor entitles the optionee to recover as damages the value of the contract and to have restored to him that with which the optionee has parted for the option. This rule compensates, as near as can be ascertained, the optionee for the losses resulting from an abrogation of the contract. In this case the evidence shows that the plaintiffs had earned $10,050, to be applied as payment on the option. The defendant's breach operated directly to deprive them of the benefit of applying this sum and consequently caused them the loss thereof. This item is fixed and certain, and for its loss the plaintiffs are entitled to be compensated. The plaintiffs claim the right to recover compensation for deprivation of securing the land, and assert that this is measured by the difference in the market price of the lands and their contract value. But we do not perceive how this can be a measure of such loss. They had no contract for this purchase, as heretofore shown, nor can such damage be recovered as part of the value of the contract, for it appears that under the conveyance by the defendant to the Hess Company the defendant reserved the right to convey to the plaintiffs under the option and the grantee agreed to join therein to give title to the plaintiffs, if the plaintiffs demanded a conveyance upon the terms in the option. The loss of the land, under the circumstances, is of such character that the plaintiffs might reasonably have avoided it by accept-

ing the title to the lands from the defendant within the defendant's right under the conveyance to the Hess Company, and that they should have done so upon the principle of avoidable consequences as to resulting damages from illegal acts and which the party damaged is in justice called on to do if it can be reasonably done. Under the circumstances of the case the plaintiffs cannot be said to have been deprived of the opportunity to obtain the title to these lands if they were ready and willing to buy them upon the conditions of the option. Upon the record of the case no other elements of damages are established as the result of the breach of this contract aside from the $10,050 fund which has been accumulated by the plaintiffs for their benefit and was to be applied as payment of the option. Their right to this sum they lost as a direct consequence of defendant's violation of the contract, and they are entitled to be compensated for such loss. From this it results that the lower court erred in holding that there was merely a nominal breach of the agency and option contract which resulted in only nominal damages to the plaintiffs. We consider that there was a substantial breach of the contract by the defendant; that the plaintiffs had the right to and did stand on the breach to recover the sum of $10,050 with interest from the date action was commenced.

*By the Court.*—The judgment appealed from is modified on the plaintiffs' appeal by striking out the words "six cents" and inserting in lieu thereof the following: "twelve thousand three hundred and nine dollars," and as so modified is affirmed; and that the defendant have nothing on its appeal.

WINSLOW, C. J., and BARNES, J., dissent.