LUKENS IRON & STEEL COMPANY, Appellant, vs. HART-
MANN–GREILING COMPANY, Respondent.

*April 29—May 27, 1919.*

*Sales: Contract to deliver: Delivery within reasonable time: When
time is essence of contract: Failure to deliver: Waiver of
·damages: Duty of injured person to minimize damages:
Broker or agent: Imputed knowledge.*

1. Whether the person making a sale is called a broker or an agent
   is not material, the knowledge of either being the knowledge
   of the principal. .
2. One who breaches a contract to deliver materials is chargeable
   with such damages as might fairly and reasonably be consid-
   ered as either arising naturally—that is, according to the usual
   course of things—from such breach, or such as may reason-
   ably be supposed to have been in contemplation by both par-
   ties, at the time they made the contract, as the result of a
   breach thereof.
3. Where the time of delivery is not fixed in a sale of goods, de-
   livery must be made within a reasonable time.
4. Where steel was ordered to be used in completing a marine
   boiler to be installed in a dredge then being constructed by the
   purchaser for the government, the purchaser being liable to
   certain penalties if the boiler was not completed on a certain
   date, an agreement by the seller to deliver the steel within
   three weeks was of the essence of the contract, the seller hav-
   ing knowledge of the penalties.
5. Where the seller had failed to deliver the steel within the time
   agreed, an agreement to waive damages if it should be shipped
   December 1st was not binding on the purchaser where it was
   not shipped until December 9th.
6. The mere acceptance by the purchaser of property after dam-
   ages have accrued in consequence of nondelivery according
   to contract does not waive or relinquish a right of action for
   damages which had accrued at the time of acceptance.    ˅
7. Where one claiming damages for breach of a contract can mini-
   mize the damages he is obliged to do so and not unnecessarily
   increase them.

APPEAL from a judgment of the municipal court of Brown
county: CARLTON MERRILL, County Judge and Acting Mu-
nicipal Judge. *Affirmed.*

This action was brought to recover for a quantity of steel used in the completing of a marine boiler to be installed in a dredge called the "Gaillard," then being constructed by the defendant at Green Bay for the United States government at an agreed price of $105,000. The boiler was to be completed by April 4, 1916. The market value of the material furnished was $1,113.55.

The issues in the case are raised upon counterclaims of defendant for alleged damage occasioned by delay in delivery of the material and for the cost of reflanging the hole in the boiler head claimed to have been defective. The original inquiry respecting the purchase of this material was made through A. M. Castle & Company, with offices in Chicago and Milwaukee, who advertised as Western Sales Agents of the plaintiff.

The case was tried to the court and a jury, and the jury found by special verdict that the plaintiff failed to deliver the steel within the time required by the contract; that the delay in delivering the material was not occasioned by the act or default of the defendant; that the neglect of the plaintiff to deliver the material within the time required by the contract was the proximate cause of the delay in completing the dredge by defendant until after the 4th day of April, 1916; that the defendant did not waive the delivery by plaintiff of the material within the time required by the contract; that the defendant was damaged by reason of plaintiff's failure to deliver the steel and material within the time required by the contract in the sum of $1,000; that plaintiff failed to properly flange the furnace heads according to the contract between plaintiff and defendant, and defendant was damaged thereby in the sum of $182.

The court ordered judgment on the counterclaim for $86.45, being the difference between the market value of the material furnished, $1,113.55, and the aggregate amount of damages, $1,182. Plaintiff appealed from the judgment.

For the appellant there was a brief by *Kittell, Jaseph & Redfield* of Green Bay, and oral argument by *Lynn D. Jaseph*.

*C. W. Lomas* of Green Bay, for the respondent.

KERWIN, J.    It is established by the evidence and the verdict that the defendant in May, 1915, entered into a contract with the United States government to build a dredge, and afterwards negotiated with A. M. Castle & Company for the purchase of material for the steam boiler in said dredge. The negotiations with A. M. Castle & Company resulted in an order addressed to the plaintiff for such material at an agreed price to be charged to the defendant.    No time was fixed for delivery.    A. M. Castle & Company knew that the contract contained penalties in case of failure to complete within the time specified in the contract of defendant with the United States government.    Although defendant, after the order of August 17th was placed, repeatedly insisted upon quick delivery, no shipment was made until December 9, 1915.    The defendant accepted the material but did not pay for it.    Because of the delay in shipping defendant was obliged to construct the boiler at extra expense and was unable to complete the dredge according to the terms of its contract with the government, and sustained damages on account of interest on money withheld by the government, expense of insurance and inspection during the period of delay.    Several contentions are made by appellant for reversal, which we shall treat in their order.

1. It is contended that A. M. Castle & Company were not the agents of the plaintiff in making the sale to defendant. A. M. Castle & Company advertised on their letter-heads and correspondence that they were the "Western Sales Agents *Lukens Iron & Steel Company*," and the correspondence generally, which was quite extensive, tends to show that A. M. Castle & Company was the agent for plaintiff in selling the material in question.    They placed the order with plaint-

iff and corresponded with it with reference thereto. It is true that the negotiations which resulted in placing the order for the steel were carried on between defendant and A. M. Castle & Company, but the evidence tends to show that they were acting for plaintiff. Moreover, the plaintiff adopted the contract made through A. M. Castle & Company as its contract, made it its own, and sued upon it. The letter relating to waiver and insisting that plaintiff would not ship unless penalty was waived also tends to show that A. M. Castle & Company were agents of plaintiff in the deal.

The appellant insists that A. M. Castle & Company were brokers, not agents of plaintiff. It is not very material whether they be styled brokers or agents. The question is, Did they act for plaintiff in making the contract in question, and did plaintiff adopt the contract, act upon it, and deliver the steel under it? The knowledge of a broker is generally imputed to the principal. 9 Corp. Jur. 673. The evidence also tends to show that plaintiff affirmed the contract made for it by A. M. Castle & Company. We are satisfied the evidence shows that A. M. Castle & Company were agents of plaintiff, and that plaintiff was bound by their acts and knowledge. A. M. Castle & Company knew the terms of the government contract at least as early as the date of completion of the contract, August 17, 1915, and knew that it was a penalty contract. Their knowledge was the knowledge of the plaintiff, hence plaintiff was chargeable with such damages as might fairly and reasonably be considered as either arising naturally—that is, according to the usual course of things—from such breach, or such as may reasonably be supposed to have been in contemplation by both parties at the time they made the contract as the result of a breach thereof. *Hadley v. Baxendale,* 9 Exch. 341; *Kellogg v. Malick,* 125 Wis. 239, 103 N. W. 1116; *Gross v. Heckert,* 120 Wis. 314, 97 N. W. 952; *Guetzkow Bros. Co. v. A. H. Andrews & Co.* 92 Wis. 214, 66 N. W. 119.

The question of agency on the evidence produced was for

the jury. *Garlick v. Morley,* 147 Wis. 397, 132 N. W. 601; *Taylor v. Seil,* 120 Wis. 32, 34, 97 N. W. 498.

It is argued that plaintiff did not know that the defendant's contract with the government imposed penalties. But A. M. Castle & Company, agents of plaintiff, knew it, and its knowledge was attributable to plaintiff. *Ross v. Northrup, King & Co.* 156 Wis. 327, 144 N. W. 1124; *Owen v. Roberts,* 36 Wis. 258; *Geel v. Goulden,* 168 Mich. 413, 134 N. W. 484; *Ney v. Eastern I. T. Co.* 162 Iowa, 525, 144 N. W. 383; *Brown v. People's Nat. Bank,* 170 Mich. 416, 136 N. W. 506.

2. It is further insisted that the steel was furnished within a reasonable time. It is true no time of delivery was fixed in the order, but the rule of law is well settled that under such circumstances the delivery must be within a reasonable time. *Lang v. Menasha P. Co.* 119 Wis. 1, 96 N. W. 393. The jury found that plaintiff failed to deliver the steel within the time required by the contract. The question as to what constitutes a reasonable time on the evidence in this case was for the jury. *Western L. & C. Co. v. Copper River L. Co.* 138 Wis. 404, 120 N. W. 277; *Greenwood v. Davis,* 106 Mich. 230, 64 N. W. 26.

When the order was solicited by A. M. Castle & Company in June, 1915, they stated that the order could be filled in about three weeks. There was a large amount of correspondence between A. M. Castle & Company and plaintiff respecting the details of the material to be furnished and the order was finally placed August 17, 1915. After this the evidence shows that defendant was constantly urging immediate delivery and threatened the enforcement of the penalties and damages in case the order was not promptly filled. In A. M. Castle & Company's letter dated August 17, 1915, to the plaintiff it is stated, respecting the order for the material, "This is a lot we protected them on at above price," and it is also stated in this letter that all materials are to be made according to United States government rules and regula-

tions. The order practically described the material to be furnished and the price. While the defendant had a right under the terms of the contract to believe that this material would be furnished within a reasonable time after August 17, 1915, and, as the correspondence shows, was represented could be furnished within three weeks, it was not shipped until the 9th day of December following and was not received by defendant until December 22d. In the instant case time was of the essence of the contract. *Henderson v. McFadden,* 112 Fed. 389.

3. It is contended by appellant that defendant waived delivery according to the contract, hence was not entitled to damages. This contention is based upon the proposition that since A. M. Castle & Company, acting for plaintiff, offered to ship December 1st provided defendant would waive damages, and that defendant consented to receive the steel on this proposition and afterwards received the material which was shipped December 9th, it thereby waived all damages. The difficulty with this contention is that, even assuming for the purpose of the argument that defendant did consent to waive damages if shipment was made in accordance with the proposition, the plaintiff failed to comply with the proposition so made, because shipment was not made until December 9th. This court has held that waiver is the voluntary relinquishment of a known right, and has also held that the mere acceptance of property under a contract to deliver, after damages have accrued in consequence of nondelivery according to the contract, does not waive or relinquish the right of action for damages which had accrued at the time of the acceptance of the property. *Schweickhart v. Stuewe,* 71 Wis. 1, 36 N. W. 605.

The rule of the foregoing case is particularly applicable in the instant case. Here the damages had accrued at and prior to the time of the shipment, and to refuse delivery at that time, under the circumstances of this case, would greatly enhance the damages, because the defendant would be unable

to obtain the material, hence the construction of the dredge would be greatly delayed and the damages thereby greatly enhanced.    Where one claiming damages for breach of contract can minimize the damages he is obliged to do so and not unnecessarily increase them; and so the fact that defendant accepted the delivery and thereby minimized damages was not a waiver of damages accrued at the time, unless it appears that the defendant voluntarily waived the damages which had accrued.    *Sixta v. Ontonagon Valley L. Co.* 157 Wis. 293, 306, 147 N. W. 1042.

The evidence in the case supports the finding of the jury that the defendant did not waive.    In order to constitute a waiver in this case it was necessary for the plaintiff to show that it had strictly complied with its proposition upon which the waiver was based.    It did not do so.    It made a proposition to ship December 1st if defendant would waive damages.    Defendant replied to this proposition by telegram merely stating, "Ship boiler material first next week follow by tracer O. K."    The proposition and telegram, therefore, did not amount to a waiver, because the proposition upon which the alleged claim of waiver is based was not complied with.    Whether, if the plaintiff had complied with its proposition and had shipped December 1st, the acceptance of the goods under the telegram sent by defendant would have amounted to a waiver of damages which had accrued at that time under the peculiar circumstances of this case, we need not and do not decide.    The situation was peculiar.    At the time the order was given the steel could have been easily obtained.    At the time of the alleged waiver and for a long time prior thereto the steel market had tightened and the defendant could not have obtained the steel elsewhere.    Therefore the defendant was forced to accept it when it did or greatly enhance damages.

4. Point is made by counsel for appellant that error was committed in the admission and rejection of evidence.    We find no prejudicial error under this head.    We are convinced

that the verdict is supported by the evidence and warrants the judgment rendered.

*By the Court.*—The judgment of the court below is affirmed.