HUGGETT, Respondent, vs. SEARS, ROEBUCK & COMPANY, Appellant.*

*December 3, 1945—February 15, 1946.*

* Motion for rehearing denied, with $25 costs, on April 12, 1946.

For the appellant there was a brief by *Hale, Skemp & Nietsch* of La Crosse, and oral argument by *Quincy H. Hale*.

For the respondent there was a brief by *Donovan, Gleiss & Goodman* of Sparta, and oral argument by *L. J. Goodman*.

FOWLER, J.   The plaintiff sues to recover the damages resulting through breach by the defendant of an alleged contract by which the defendant agreed to sell and deliver to the plaintiff one thousand two hundred newly hatched turkey poults, which it did not deliver.   The damages claimed consist of the loss of the profit the plaintiff would have made by raising the poults and selling them at maturity had the defendant delivered them.

The basis of the claim is two memorandum slips, each designated as "shipper's copy," made by the defendant on March 29, 1943, naming plaintiff as buyer and giving his address, each for six hundred poults, stating sixty-one cents each as the selling price and $366 as the total price, $100 as the deposit necessary to be made and May 19th and May 26th as the times of delivery "wanted." No "deposit" or payment was made at the time of the execution of the memoranda but $200 was sent by the plaintiff to the defendant on March 30th. These memoranda constituted a mere offer to sell and were of themselves insufficient to constitute a valid contract of sale. *North American Seed Co. v. Cedarburg Supply Co.* 247 Wis. 31, 18 N. W. (2d) 466. The slips in evidence were sent to the plaintiff on April 16th, at which time the originals were sent by the La Crosse store of the defendant where the negotiations were had to the principal place of business of the defendant at Chicago. On April 20th defendant sent to the La Crosse store a telegram reading "Impossible to furnish any turkey poults. Advise Theo. Huggett immediately." This telegram was sent by the branch store to the plaintiff on April 20th. It bore a notation by the manager of the branch store: "Will send your money back within a day or two," and two checks of the defendant of $100 each were sent to the plaintiff on April 22d and retained by him. The letter containing the checks is as follows:

"Dear Huggett: Inclosed find checks for amount you had deposited on the turkey poults. I hate to lose the deal but cannot do any better than sixty-eight cents when getting them from local hatchery. This Caledonia hatchery agreed to let me have one thousand two hundred poults just as accommodation to help me out, because they were really spoken for already. As long as you can get them from the Barron hatchery for fifty-four cents, I'll call up and cancel my order. Hope we can do business some other time again, and have better luck in getting you the merchandise."

Huggett did not answer this letter although he was informed by it that Mr. Mann, the employee of the defendant in charge of the department of the La Crosse store selling turkey poults and chicks who made the memorandum on the telegram above referred to and who signed the letter, was under misapprehension as to his ability to get the poults at fifty-four cents. On April 21st, the day before he received the checks, the plaintiff and his wife went to the branch store and had conversations with the manager of the store and with Mr. Mann. Mr. Mann stated in this conversation that he thought he could get the poults wanted from a hatchery conducted by a friend of his at Caledonia, Minn., for delivery a week or two later than the time the slips stated they were "wanted." Mann testified the plaintiff said "a week or two wouldn't make much difference, so he could get them." Mann drove to Caledonia and the friend agreed to furnish one thousand two hundred poults to defendant for delivery in June at sixty-three cents each. The plaintiff testified on the trial that delivery in June would have been satisfactory to him.

The testimony is thus without dispute that the defendant on April 22d was able to furnish the poults in June and that delivery then would have been satisfactory to the plaintiff. There is a jury question whether the plaintiff in the conversation of April 21st told the agents of defendant in charge of the La Crosse store that he would take the poults if they could procure them. Defendant's agents testify that he did not so say, and plaintiff on cross-examination admitted on the trial that he did not so say. The plaintiff's wife testified that he then said that he would take the poults but did not say at what price he would take them. It is without dispute that he did not say that he would not take them. It is also without dispute that the defendant was "willing and able" on April 22d to deliver the poults at sixty-eight cents each and if so it was able to furnish them at sixty-one cents.

The case was submitted to the jury on a special verdict which purported to find, (1) that defendant on March 29,

1943, did not agree in writing to deliver six hundred turkey poults to plaintiff on May 19th and a like number on May 26th at a price of sixty-one cents each; (5) that plaintiff on May 19th and May 26th was able and willing to perform his agreement respecting payment for and acceptance of the poults; (6) that defendant on March 29th accepted plaintiff's order subject to its being able to secure the turkey poults; (7) that on April 22d when the $200 was returned the defendant was willing and able to deliver plaintiff the poults at sixty-eight cents each; (8) that plaintiff refused to accept the poults at sixty-eight cents each; (9) that plaintiff's damages were $800. The verdict contained questions (2), (3), and (4) which were to be answered only if question (1) were answered "Yes." These questions were: (2) Did plaintiff at or about the time of the agreement pay $200 to the defendant? (3) Did defendant about April 20th notify plaintiff it was canceling the contract? (4) Did the defendant fail and refuse to deliver the poults at sixty-one cents each?

On the verdict the defendant moved first for judgment on the verdict dismissing the complaint; and if the first motion be denied to change the answer as to damages from $800 to $84. The plaintiff moved to change the answers to the questions of the verdict so as to entitle him to judgment on the verdict as amended to judgment for $800, or in the alternative for a new trial for various reasons including perversity of the verdict and for miscarriage of justice.

The court denied defendant's motions and denied plaintiff's motion to change the answers because so doing would not correct what he deemed a "perverse" verdict and ordered a new trial.

We outline the following facts which seem to us to raise a question which was not submitted to the jury and which may be decisive of this case: As stated, we concur in the view of the trial court that on March 29, 1943, a tentative agreement was made which was confirmed by the plaintiff paying $200 on March 30th, for the purchase of one thousand two hundred

broad-breasted turkey poults, six hundred to be delivered on May 19, 1943, and six hundred on May 26, 1943, at a price of sixty-one cents each. It appears that on the 20th day of April, 1943, the defendant instructed its agent, B. C. Mann, at La Crosse, by telegram, that it was impossible to furnish any turkey poults and to advise Theodore Huggett immediately. Mann thereupon mailed the telegram to the plaintiff, writing on the bottom of it, the following: "Will send your money back within a day or two. B. C. Mann." On April 21st, plaintiff went to La Crosse and the whole matter was discussed between the plaintiff, Mr. Mann, Mr. Trimble, the defendant's manager, and Mr. Mellum, assistant manager. It appears that after advising the plaintiff that the defendant could not furnish the turkey poults, Mann suggested that they might be procured of a person he knew in Caledonia and would contact them as to the best possible time to secure the turkey poults. Following this statement, he was directed to go there at once which he did. He returned and the next day Mason, an employee of the defendant, was sent to the home of the plaintiff to advise him that the turkeys could be procured but that they would cost more than the contract had called for, that is, sixty-eight cents. On his return apparently Mason communicated to Mann the fact that Huggett would not agree to pay sixty-eight cents each for the poults. Under the belief that Huggett would not take the poults at sixty-eight cents each, Mann on April 22d, wrote the plaintiff the letter, set out in the opinion.

The two checks of $100 each, inclosed in the letter of April 22d, were accepted and cashed by the plaintiff and bear his indorsement. So far as the record discloses the plaintiff made no objection to the cancellation of the order by the defendant and had no further communication with the defendant or its agents. The first intimation the defendant had that the whole matter had not been amicably disposed of was when this action was begun on the 18th day of December, 1944, a year and eight months later. Under the facts disclosed by the record a serious question is presented whether the failure of

the plaintiff, knowing as he testified that he did, that the defendant labored under a misapprehension as to plaintiff's ability to procure poults at fifty-four cents each, did not thereby manifest his assent to the termination of the contract. Restatement, 2 Contracts, sec. 410, and comment; sec. 406, comment *b;* Wis. Anno. p. 265.

In *Reiber v. Rathbone, Sard Co.* (1923) 180 Wis. 287, 193 N. W. 67, it was held that the failure of an employee to assert his rights under his contract of employment would sustain a finding of the trial court that he voluntarily terminated the contract. See Wis. Anno. p. 269, sec. 410.

If the defendant had been promptly notified by the plaintiff that he did not assent to the termination of the contract, the defendant would have had an opportunity to supply the poults or adjust the matter in some other way. The plaintiff was fully advised that Mann, in reliance upon what he believed to be the fact that the plaintiff could procure the poults at fifty-four cents, canceled the arrangement made with the dealer at Caledonia, but plaintiff did "nothing to straighten him out." Whether upon the whole evidence, only a part of which is stated, the conduct of the plaintiff amounted to an assent to the termination of the contract is a question for the jury.

If it be found upon a new trial that the contract was not terminated by the conduct of the parties, we concur in the view of the trial court that under those circumstances the defendant was bound to deliver the poults at sixty-one cents each, but it does not necessarily follow that plaintiff was entitled to recover prospective profits. When a valid contract of sale exists and the defendant breaches it, it becomes the plaintiff's duty to minimize his damages if he reasonably may. 46 Am. Jur., Sales, p. 830, sec. 707; *Lukens Iron & Steel Co. v. Hartmann-Greiling Co.* 169 Wis. 350, 172 N. W. 894. The defendant claims that under this rule, if the plaintiff was entitled to recover, he was not entitled to recover prospective profits, but was entitled to recover only $84, the difference between the sixty-eight cents each that he might have procured

the poults for from the defendant and the sixty-one cents each that the defendant agreed to furnish them for. While we consider that the plaintiff was entitled to recover, under the circumstances stated, we cannot therefore grant the defendant's third alternative motion to change the jury's answer to the question as to damages from $800 to $84, nor can we direct entry of judgment for $84 under the discretionary power granted us under sec. 251.09, Stats., as we would do if on the undisputed evidence the plaintiff's damages were $84.

Assuming that the contract was not terminated, our reasons for not ordering judgment for $84 will now be stated. As first stated, the memoranda made by defendant's agent, Mann, did not themselves constitute valid contracts of sale because they were not signed by either party. However, where a cash payment is made or something given "in earnest to bind the contract," a valid contract exists, and this is true although the goods are intended to be delivered at a future time. Sec. 121.04 (1) and (2), Stats. When the plaintiff deposited the $200 as earnest money or part payment, the defendant's offer to sell was still open and plaintiff's deposit completed the contract. This is true whether the offer was absolute as plaintiff claims or as defendant claims conditioned on the defendant's being able to procure the poults. Thus a valid contract was created and the defendant was bound to furnish the poults at the agreed price. In this situation the plaintiff, under the minimizing-damages rule, was obligated to procure the poults on the open market if they were so procurable by reasonable diligence, and if so procurable his damages were the difference between the agreed price and what they could have been procured for. If they could not be so procured, the plaintiff was entitled to the profits he would have made had the goods been delivered. It does not appear that he could not as he made no effort to get them from the Caledonia hatchery where it is undisputed that defendant could have procured them at sixty-three cents each. Where the damages are not minimized by

ability to procure goods in the open market, a plaintiff is not required to take the goods from the defendant at a higher price than that agreed upon. 46 Am. Jur., *supra,* sec. 708; 46 A. L. R. 1193. This view is indirectly supported by this court in *Pope Metals Co. v. Sadek,* 149 Wis. 394, 135 N. W. 851, where it was held that the minimizing-damages rule did not require the plaintiff to accept goods at a place other than the one stated in the contract and pay the transportation charges there payable on delivery. If the instant plaintiff told the defendant he would take the poults, it would have been the defendant's duty to furnish them; and if it did not furnish them, it would have been liable for prospective profits if plaintiff could not by reasonable diligence have procured them elsewhere. But whether he so said is a jury question and we think it is also a jury question whether in view of the misapprehension of the defendant evidenced by its letter of April 22d, such statement was not reasonably required of the plaintiff.

*By the Court.*—The order granting a new trial is affirmed.

---

* Motion for rehearing denied, with $25 costs, on April 12, 1946.